UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

|  |  |  |
|---|---|---|
| AT&T CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:06-CV-209 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| L & M MUSIC, INC. | ) | |
| | ) | |
| Defendant, Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EPB TELECOM and | ) | |
| MONARK VOICE & DATA, INC. | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**MEMORANDUM**

Before the Court is Plaintiff AT&T Corporation's motion for summary judgment (Court File No. 18). Plaintiff filed this motion almost one year ago, on October 23, 2007. On June 26, 2008, this Court ordered Defendant L & M Music, Inc. to respond to Plaintiff's motion within 10 days (Court File No. 42). Defendant moved for an extension of time to file its response (Court File No. 45) and the Court granted a 45 day extension, setting the response deadline for September 1, 2008. This deadline has passed, and the Court now considers Plaintiff's summary judgment motion without the benefit of a response by Defendant. Even absent such a response, however, Plaintiff has not met its burden of showing there is no genuine issue as to any material fact, and accordingly, the Court will **DENY** Plaintiff's motion for summary judgment (Court File No. 18).

**I.     FACTS AND PROCEDURAL BACKGROUND**

Plaintiff is a provider of telecommunications services, including domestic long-distance and international telephone calling (Court File No. 1). Plaintiff's complaint alleges on June 12, 2005, it provided Defendant with telecommunications services valued at $15,541.32, for which Defendant has not paid (*id.*). Plaintiff complains Defendant has been unjustly enriched by such services and asks this Court for judgment in that amount, pre- and post-judgment interest, and costs and reasonable attorney's fees (*id.*). Defendant is responsible for such charges, according to Plaintiff, because Plaintiff provided telecommunications services under a tariff filed with the Federal Communications Commission ("FCC") which makes Defendant responsible for paying all invoices and charges for telecommunications services rendered by Plaintiff (*id.*).

Defendant filed an amended answer to the complaint and simultaneously brought a third-party complaint against third-party defendant EPB Telecom ("EPB") (Court File No. 8). Defendant admitted Plaintiff has provided telecommunications services, but denied that any services were provided on June 12, 2005, contending the charges sought by Plaintiff were unauthorized and should not have been incurred (*id.*). Defendant's third-party complaint alleged EPB installed a private branch exchange system ("PBX") in Defendant's office, but EPB's negligence and/or breach of contract led unauthorized individuals to access the PBX on June 12, 2005 and place international long-distance phone calls to India and Pakistan (*id.*). EPB answered the third-party complaint by denying it exercised control over Defendant's PBX; instead, Monark Voice and Data ("Monark") provided the PBX to Defendant, and Monark should have been joined by Defendant's third-party complaint, as it was a necessary party under Fed. R. Civ. P. 19 (Court File No.10). Defendant then moved to add Monark as a third-party defendant (Court File No. 15), which motion the Court subsequently granted (Court File No. 22), and Defendant filed an amended third-party complaint

2

Case 1:06-cv-00209   Document 47   Filed 09/24/08   Page 2 of 14   PageID #: 74

including Monark as a third-party defendant (Court File No. 25).

On October 23, 2007, Plaintiff filed its motion for summary judgment (Court File No. 18), along with a memorandum in support (Court File No. 19), a statement of material facts (Court File No. 20) and a supporting affidavit (Court File No. 21). In its supporting memorandum, Plaintiff claimed its tariffs had binding effect under federal law, and that Defendant was a customer under those tariffs and hence was responsible to pay for telecommunications services received on June 12, 2005. Plaintiff also claimed Defendant was liable for attorney's fees and costs. Defendant did not make a timely response to Plaintiff's summary judgment motion,[1] and on June 26, 2008, this Court ordered Defendant to respond to the motion within ten days (Court File No. 42). On July 11, 2008, Defendant moved for an extension to file its response to Plaintiff's summary judgment motion (Court File No. 45) and was granted 45 days (Court File No. 46). The latter order made clear that Defendant was to file its response no later than September 1, 2008 (*id.*).

The 45 day period passed on September 1, 2008 without a response from Defendant. The Court thus considers Plaintiff's motion for summary judgment without resort to any counter-arguments Defendant may wish to offer.

## II. STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the

---

[1] Parties in the Eastern District of Tennessee "shall have 20 days in which to respond to dispositive motions" which include motions for summary judgment. E.D.TN. LR 7.1(a)(2).

burden rests on the movant to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court must view the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). It is the Court's duty to determine if the non-movant has presented sufficient evidence to raise issues of fact; however, the Court does not weigh evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

At the same time, the purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 (advis. comm. notes) (1963). The movant must demonstrate the absence of a genuine issue of material fact, but the non-movant is not entitled to a trial solely on the basis of its allegations. The non-movant must submit significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324. A scintilla of evidence is not enough; the non-movant must present evidence sufficient for a jury to reasonably find for its side. *Liberty Lobby*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The movant is entitled to summary judgment if the non-movant fails to make a satisfactory showing on an essential element of its case for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. It is the Court's role to decide if a fair-minded jury could return a verdict for the non-moving party, or if "the evidence . . . is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). Finally, "[w]here the moving party will have the burden of proof at trial, it must affirmatively demonstrate

4

that no reasonable trier of fact could find other than for the moving party." *AT&T Corp. v. Dataway Inc.*, 2008 WL 3842981, at *2 (N.D. Cal. Aug. 14, 2008).

### III. DISCUSSION

#### A. Did Plaintiff's Tariff Constitute Federal Law?

Plaintiff's threshold argument is that its filed tariff, setting the rates its charges to customers, constitutes binding federal law. Plaintiff, like all telecommunications companies which qualify as common carriers, is required to file tariffs with the FCC pursuant to 47 U.S.C. § 203(a). The "tariffs are not mere contracts, but rather have the force of law." *Am. Tel. & Tel. Co. v. N.Y. City Human Res. Admin.*, 833 F. Supp. 962, 970 (S.D.N.Y. 1993); *see also Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214, 221–22 (1998). Tariffs filed with the FCC "conclusively and exclusively control the rights and liabilities between a carrier and its customer." *MCI Telecomms. Corp. v. Graham*, 7 F.3d 477, 479 (6th Cir. 1993). Customers are charged with notice of a carrier's tariffs and their terms. *See Cent. Office Tel.*, 524 U.S. at 222.

Here, Plaintiff filed a tariff with the FCC providing in relevant part:

> The Customer is also responsible for the payment of bills for BTS [Business Telecommunications Service]. This includes payment for BTS calls or services:
>
> • Originated at the Customer's number(s);
> • Accepted at the Customer's number(s) (i.e. collect calls);
> • Billed to the Customer's number via Third Number Billing if the Customer is found to be responsible for such call or service, or the use of a Company-assigned Special Billing Number; and
> • Incurred at the specific request of the Customer.

AT&T FCC Tariff No. 30 § 3.4.1(A) (Court File No. 18) ("Tariff No. 30"); *AT&T Corp. v. Midwest Paralegal Servs., Inc.*, 2007 WL 1341448, at *3 (E.D. Wis. May 7, 2007). Tariff No. 30 appears to

5

make entities which can be defined as "customers" responsible for payment of incoming and outgoing calls, including those for which customers are found responsible. This tariff was validly filed with the FCC and establishes a legal obligation to pay by customers covered under it. "To collect charges pursuant to a tariff, plaintiffs must demonstrate (1) that they operated under a federally filed tariff and (2) that they provided services to the customer pursuant to that tariff." *Advamtel, LLC v. AT&T Corp.*, 118 F. Supp. 2d 680, 683 (E.D. Va. 2000). It is undisputed that Plaintiff was operating under a tariff validly filed with the FCC. The question, then, is whether Defendant was a "customer" within the meaning of Plaintiff's tariff such that it was obligated to pay Plaintiff for long distance services rendered on June 12, 2005.

### B. Was Defendant a Customer of Plaintiff?

Plaintiff argues Defendant was its customer because it did not take "reasonable steps to prevent the creation of an inadvertent carrier-customer relationship with [Plaintiff] or to control the unauthorized use of its telephone system" (Court File No. 19). As part of its affidavit supporting its summary judgment motion, Plaintiff claims Defendant "accepted the Terms and Conditions of Tariff 30 by allowing access to [Plaintiff's] Network" and that "[o]n or about June 12, 2005, Phone calls either originated from Customer's Number(s) or were accepted at Customer's Number(s) in the amount of $15,541.32 . . ." (Court File No. 21). Plaintiff also attaches an invoice sent to Defendant for $15,541.32, including long distance charges, taxes, and fees; the "Call Detail" section of the bill lists seven calls of varying duration made from Defendant's telephone number in Chattanooga to numbers in the Philippines (*id.* Ex. A). Plaintiff further argues Defendant cannot use the unauthorized access to its telephone system as a defense to nonpayment—it must pay for all calls which originated from its telephone number because it constructively became Plaintiff's customer.

6

As support, Plaintiff cites *AT&T Corp. v. Cmty. Health Group*, 931 F. Supp. 719, 723 (S.D. Cal. 1995) ("[A] customer is liable for *all* long-distance calls made from its on-premises PBX, regardless of whether such calls were authorized or fraudulent.").

Defendant, of course, failed to respond to Plaintiff's motion for summary judgment by the extended deadline, and hence the Court is bereft of any responses to the allegations in Plaintiff's motion. In its answer to Plaintiff's complaint, however, Defendant argues it is not indebted to Plaintiff for the $15,541.32 charge because the calls at issue did not originate from its telephone system, the calls were unauthorized, and Defendant should not have to pay for service it did not receive (Court File No. 8). Defendant alleges the charges were the result of unauthorized persons hacking into its telephone system and placing international long-distance calls (*id.*). Defendant contends because it did not intend to enter into a customer relationship with Plaintiff, it would be "unjust and inequitable" to charge it for services from which it did not benefit (*id.*).

An entity can order telecommunications services from a carrier, and thereby enter into a customer-carrier relationship, in two ways. First, an entity can affirmatively order service, such as by presubscription. *See United Artists Payphone Corp. v. N.Y. Tel. Co.*, 8 F.C.C.R. 5563, 5565–66 (1993).[2] Second, an entity can "constructively" order service by failing to take steps to control unauthorized calling, or installing its equipment in such a way that unauthorized callers could access its system and place calls on the carrier's account, creating an "inadvertent carrier-customer relationship." *Id.* at 5566. Such constructive ordering requires a court "to determine whether [the putative customer] took reasonable steps to prevent unauthorized callers from gaining access to [the

---

[2]FCC interpretations of tariff provisions receive deference because "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." *FCC v. WNCN Listeners Guild*, 450 U.S. 582, 598 (1981).

7

carrier's] network." *Id.* More specifically, "the constructive ordering doctrine [holds that] a party 'orders' a carrier's services when the receiver of services (1) is interconnected in such a manner that it can expect to receive access services; (2) fails to take reasonable steps to prevent the receipt of access services; and (3) does in fact receive such services." *Advamtel*, 118 F. Supp. 2d at 685 (citing *In re Access Charge Reform*, 14 F.C.C.R. 14221 (1999), at ¶ 188). These requirements thus establish the elements of a constructive ordering claim. Such a claim can be defeated, however, by the putative customer's presentation of evidence it took affirmative steps to prevent unauthorized telephone system access. *See, e.g.*, *AT&T Corp. v. Ridge Co.*, 2008 WL 2557451, at *3 (N.D. Ind. June 23, 2008); *Midwest Paralegal*, 2007 WL 1341448, at *8.

*Ridge* illustrates a case where the plaintiff telecommunications company (AT&T), bearing the burden of proof at trial and as the moving party for summary judgment, did not affirmatively show the defendant failed to take reasonable steps to prevent unauthorized access. There, unauthorized persons made $27,393.76 worth of AT&T calls over approximately a month-long period, using defendant Ridge's telephone lines to access the system. *Ridge*, 2008 WL 2557451, at *1. The court applied the constructive ordering doctrine, requiring AT&T to show Ridge did too little to prevent unauthorized users from using its equipment to access AT&T's services. *Id.* at *3. The court held AT&T failed to meet this burden: "AT&T's submissions never quite articulate why these precautions against unauthorized access fell short of reasonable." *Id.* Further weakening AT&T's case was Ridge's submission of evidence of its precautionary measures: limiting access to voice mail accounts by using pass codes, and denying access to accounts where pass codes were not changed. *Id.* Accordingly, the court denied AT&T's motion because "[t]he summary judgment record contains nothing that would allow a reasonable trier of fact to find that Ridge became a

8

customer of AT&T (for tariff purposes) by failing to take reasonable affirmative steps to prevent unauthorized calling." *Id.*

Similarly, in *Midwest Paralegal*, AT&T moved for summary judgment against defendant Midwest Paralegal for $12,618.51 in long-distance charges and fees for six unauthorized calls made to the Philippines. *Midwest Paralegal*, 2007 WL 1341448, at *1–2. Midwest Paralegal contested AT&T's classification of it as a "customer," also under Tariff No. 30. *Id.* at *4. Midwest Paralegal offered evidence of its affirmative steps to protect its network, including (like Ridge) an access code. *Id.* at *6. The production of such evidence could have led a reasonable juror to conclude Midwest Paralegal was not a customer of AT&T within the meaning of Tariff No. 30 because it took affirmative steps to control unauthorized calling, and hence did not constructively order AT&T's service. *Id.* at *8. Accordingly, the court denied AT&T's summary judgment motion. *Id.*

To support its summary judgment motion here, Plaintiff relies principally on *Community Health Group*, a case in which AT&T as plaintiff prevailed on its motion for summary judgment. There, after rehashing the constructive ordering doctrine, *Cmty. Health Group*, 931 F. Supp. at 722, the court observed the defendants offered no evidence they took action to control unauthorized access through their system to AT&T's services, other than the "conclusory" claim they took "affirmative safeguarding measures," *id.* at 723. Such evidence could have taken several forms, but "[d]efendants have presented no evidence that they or their equipment lessors took any steps to implement line-blocking features, institute an operator-screening service, undertake their own line-monitoring, or follow any of the other 'affirmative safeguarding measures' that the FCC has recognized as a valid defense to a 'constructive ordering' allegation." *Id.* As such, defendants became AT&T's inadvertent customers, and the court granted AT&T's motion for summary judgment. *Id.*

9

*Community Health Group*'s analysis is questionable in at least one critical respect, however: in its statement of the law governing summary judgments, *id.* at 721–22, it fails to mention the uphill battle faced by a moving party who also bears the burden of proof at trial—namely, the plaintiff in a civil case. Recall that "[w]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also* William W. Schwarzer, *Summary Judgment under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487 (1984) ("In assessing the sufficiency of evidence to sustain a particular inference . . . the court must also consider the burden of proof on the issue and where it will rest at trial."). The *Community Health Group* court appears to have assigned the burden to the defendants (the non-moving parties) to come forth with enough evidence to show they attempted to prevent unauthorized charging of AT&T calls using their system. Instead, because AT&T moved for summary judgment, it should have been required to *affirmatively* demonstrate no reasonable trier of fact could find defendants took those steps. *See Dataway*, 2008 WL 3842981, at *2 . To the extent it did not do so, the *Community Health Group* court may have improperly awarded summary judgment to the plaintiff. Hence, Plaintiff's reliance on *Community Health Group* in this case is, at best, tenuous.

Plaintiff cites a number of other cases for the proposition that because the unauthorized calls "originated" at Defendant's number, billing to the account Plaintiff established for Defendant was proper (Court File No. 19, at 7–8). As *Midwest Paralegal* recognized, however, these cases are distinguishable in one salient regard: "[T]he party contesting the charges presubscribed to AT&T *before* the fraudulent calls were made." *Midwest Paralegal*, 2007 WL 1341448, at *7 (emphasis

10

added). For example, in *Am. Tel. & Tel. Co. v. Jiffy Lube Int'l, Inc.*, 813 F. Supp. 1164 (D. Md. 1993), the court did indeed, as Plaintiff asserts, hold that "the word 'originated' means that the calls in issue originated at Jiffy Lube's number when . . . the hacker was . . . able to access the AT&T long distance line running out of Jiffy Lube's Baltimore office." *Id.* at 1167. But Plaintiff neglects to mention the court had previously observed that AT&T *already* provided Jiffy Lube with long distance services. *Id.* at 1165. In *New York City Human Resources Administration*, the defendant subscribed to AT&T's service *before* an employee entered the room where its PBX was housed and manipulated the system to allow unauthorized calls. *N.Y. City Human Res. Admin.*, 833 F. Supp. at 968. *See also Am. Tel. & Tel. Co. v. Intrend Ropes & Twines, Inc.*, 944 F. Supp. 701, 705, 712 (C.D. Ill. 1996) (observing Intrend had subscribed to AT&T's long-distance services before concluding Intrend was liable for payment because it did not take steps to prevent unauthorized calling); *Indus. Leasing Corp. v. GTE Northwest, Inc.*, 818 F. Supp. 1372, 1373, 1374 (D. Or. 1992) (noting the plaintiff had subscribed to AT&T's long distance services, thus creating a carrier-customer relationship, and was responsible for payment for calls resulting from remote access fraud). Here, unlike in the cases Plaintiff cites, Defendant had previously purchased telecommunication services from Plaintiff, but was not subscribing to Plaintiff's services at the time the unauthorized access occurred (Court File No. 8, at 2–3). This is an important distinction because of the two ways in which a customer can order telecommunications services: affirmatively or constructively. *United Artists*, 8 F.C.C.R. at 5566. Even if the calls placed from Defendant's number originated there, Defendant did not presubscribe to Plaintiff's services, and thus cannot be said to have affirmatively ordered such services. Moreover, because Plaintiff does not provide affirmative evidence of constructive ordering, there is a genuine issue of material fact for trial which militates against the

11

Court's granting summary judgment.

In this case, applying the law discussed above to the facts viewed in the light most favorable to Defendant, this Court cannot conclude Plaintiff has met its summary judgment burden. There appears to be little dispute that the first and third elements of the constructive ordering doctrine—interconnection by a receiver of services such that it can expect to receive access services, and actual receipt of such services—were satisfied on these facts. *See Advamtel*, 118 F. Supp. 2d at 683. Indeed, given Defendant's failure to respond to the summary judgment motion, there is no dispute at all—and Defendant does admit in its amended answer that Plaintiff agreed to provide telecommunications services and that such services were rendered, even if unauthorized (Court File No. 8, at 4). Where Plaintiff's argument falls short for summary judgment purposes, however, is the second element's requirement of showing failure to take affirmative steps to prevent unauthorized access. *Advamtel*, 118 F. Supp. 2d at 683. The extent of Plaintiff's evidence is an affidavit (from its own employee) stating that phone calls originated from Defendant's number(s) in the amount of $15,541.32 (Court File No. 21) and invoices showing the details of those calls and the charges incurred (*id.* Ex. A). Yet Plaintiff produces no affirmative evidence—as it could have done, for example, by depositions or requests for production of documents from Defendant's employees—of Defendant's failure to take steps to prevent unauthorized calling. As discussed above, the burden is on Plaintiff to produce such evidence if it wishes to prevail on its summary judgment motion, because Plaintiff bears the burden of proof at trial. *Dataway*, 2008 WL 3842981, at *2. Plaintiff's discovery submissions fail to articulate not only whether Defendant's precautionary steps were reasonable, *Ridge*, 2008 WL 2557451, at *3, but whether or not Defendant took such measures at all.

Discovery in this case, including "the taking of depositions 'for evidence,'" is not scheduled

12

to end until February 16, 2009 (Court File No. 40), and it would be premature at this point to award summary judgment when further discovery could unearth evidence Defendant took the required affirmative steps to prevent unauthorized calling—or failed to—and hence did not become Plaintiff's customer, liable for payment under Tariff No. 30. Regardless of whether it did take such steps or did not, Defendant could produce evidence creating a genuine issue for trial on the second element of the constructive ordering test. Accordingly, it would be improper to award summary judgment to Plaintiff.

**C.      Is Plaintiff Entitled to Attorney's Fees and Costs?**

Lastly, Plaintiff claims it is entitled to attorney's fees and costs. It cites Tariff No. 30 again: "In the event [Plaintiff] incurs fees and expenses, including attorney's fees, in collecting or attempting to collect, any charges owed by the customer, the customer shall be liable to the company for the payment of all such fees and expenses incurred." As stated above, it is not clear at this point whether a customer-carrier relationship existed between Plaintiff and Defendant, nor whether Defendant owes the $15,541.32 or took affirmative steps to attempt to prevent unauthorized calling. As such, a determination of whether Plaintiff is entitled to an attorney's fee and cost award is, at this moment, premature.

**IV.     CONCLUSION**

For the foregoing reasons, the Court will **DENY** Plaintiff's motion for summary judgment. Nothing in this Memorandum or the accompanying Order shall affect the rights and defenses of third-party defendants EPB and Monark to the claims asserted against them by Defendant.

An order shall enter.

13

/s/
**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**